**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**AMBER ELIZABETH ALVESTEFFER,**

      **Plaintiff,**

**v.**                                                  **Case No. 8:15-cv-1115-T-27TBM**

**CAROLYN W. COLVIN, Acting
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claims for supplemental security income payments and child's insurance benefits. Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and remanded for further proceedings.

**I.**

Plaintiff applied for supplemental security income payments and child's insurance benefits in June 2011, alleging disability as of June 15, 2005, by reason of juvenile rheumatoid arthritis, joint problems, asthma, uveitis, and psoriasis. Plaintiff's applications were denied originally and on reconsideration.

Plaintiff next received a *de novo* hearing before an Administrative Law Judge ("ALJ") on March 26, 2013. (R. 43-64). Plaintiff, who was represented by counsel, testified

that she was nineteen years old and attending college full-time. On an average school day, Plaintiff said she gets up at seven or eight and her mother drives her to class. After a two-hour class, she usually gets something to eat then goes to her next class. Some classes are at night. She studies for two-plus hours. Over a year of school, she estimated she'd missed ten or so days of school. She has to leave school early sometimes because sitting in a chair is too much or she'll have a migraine and can't focus. Plaintiff reported she has never worked.

She lives with her mom. She tries to help with housework and tries to help with the cooking when her mom isn't feeling well. She reads books, watches television a little bit, listens to music, and spends time on the computer. She is interested in drawing and has taken an art class. She goes to the grocery store every week or so but does not go to church. She doesn't hang out with her friends too often but she gets along well with others and she describes her friends as "awesome." She can dress and bathe herself but sometimes needs help. She doesn't drive because she can't turn the key to start the car. She goes to physical therapy three times a week for an hour.

She takes unspecified medications that sometimes cause nausea and dizziness. She gets Remicade infusions. After the infusions, she has nausea, dizziness, an overall sick feeling, and feels cold. Sometimes these symptoms last two days; sometimes she's fine. She wears a mask to class after her infusions. She also has problems with her grip and drops things. She has difficulty sleeping; she sleeps in a chair because it's more comfortable. She has muscle spasms and swelling in her hands, feet, and legs. She can only stand for about ten minutes because of her feet, can walk for ten minutes, and she can't lift five pounds. She gets

tired very easily and has back and leg pain.  She gets infections easily when she gets a cut.  (R. 47-61).

At the close of the hearing, the ALJ determined that a consultative examination by a rheumatologist was necessary due to some inconsistencies in the record.  (R. 62-63).  On April 30, 2013, Plaintiff underwent an independent medical examination and functional assessment by Alvan Barber, M.D., a general practitioner.  (R. 554-54).

A supplemental hearing was held on June 20, 2013.  (R. 65-88).  At the outset, Plaintiff's attorney objected to the weight of Dr. Barber's findings on grounds that he was not board-certified in rheumatology and did not hold staff privileges at any hospital.  The ALJ noted that he specifically had requested a rheumatologist, but decided to proceed with the hearing.

Plaintiff testified again, largely the same as at her first round of testimony.  She was still in school, making B's and some A's.  She was treating at Shands and seeing Drs. Sucash (sic) and Elder.  She was still getting Remicade infusions.  She recently got a mineral infusion from a pain specialist that was supposed to help with fatigue and pain.  Sometimes it does and sometimes does not help.  She claimed her pain level is usually a six out of ten and up.  She has trouble concentrating when in pain.  She also has trouble with memory.  Sometimes she is given extra time on her tests in school.  She has problems with her grip and wears braces on her wrists for support.  She says she doesn't drive much because its painful and she can't turn the key.  She has good days and bad days.  (R. 70-85).

Mark Capps, a vocational expert ("VE"), testified next.  On a hypothetical assuming an individual of Plaintiff's age, education, and work experience, capable of light work with

limitations for a ten-pound maximum weight restriction; avoiding ladders, unprotected heights, and operation of heavy, moving machinery, and concentrated dust, fumes, or gasses; needing a low-stress environment with no production line; able to occasionally bend, crouch, kneel, or stoop, but needs to avoid squatting or crawling, push/pull arm controls, foot controls, the VE opined that such an individual could perform the entry level positions of ticket taker, ticket seller, order clerk, food and beverage, and surveillance system monitor  If limited to sitting less than two hours and standing and walking less then two hours in an eight-hour day, all employment would be eliminated.  (R. 85-88).

Also before the ALJ were medical records outlining Plaintiff's medical history. These matters are addressed herein as necessary.

By decision dated July 18, 2013, the ALJ determined that before attaining age eighteen, Plaintiff had severe impairments related to juvenile psoriatic arthritis, juvenile rheumatoid arthritis, psoriasis, uveitis, disorders of the spine including ankylosing spondylitis and lumbar retrolisthesis, and obesity, but she did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled a listed impairment.  The ALJ determined further that since attaining the age of eighteen, despite those existing impairments, Plaintiff nonetheless had the residual functional capacity to perform a limited range of light exertional work.  Upon these determinations and testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. On this conclusion, Plaintiff was determined to be not disabled.  (R. 13-36).

The Appeals Council denied Plaintiff's request for review after considering additional evidence (R. 1-6), and the ALJ's decision became the final decision of the Commissioner.

## II.

In this case, Plaintiff was under eighteen years of age when she applied for benefits but over eighteen before the date of decision.  A person under age eighteen years old is considered disabled if she has a medically determinable physical or mental impairment that results in marked and severe functional limitations which have lasted or can be expected to last for a continuous period of not less than twelve months.  A person over eighteen years old is considered disabled if she can establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months...."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations set forth a five-step sequential evaluation process the ALJ must follow in determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this five-step sequential evaluation, the ALJ considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the severe impairment meets or equals an impairment listed in the listing of impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether, in light of the claimant's age, education and work experience, the claimant can perform other work that exists in significant numbers in the

national economy. *Id.* at §§ 404.1520(a)(4), 416.920(a)(4). The burden is on the claimant to prove the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff raises three claims on this appeal. As stated by Plaintiff, they are as follows: (1) The ALJ failed to apply the correct legal standards to the opinion of Dr. Alvan Barber; (2) The ALJ failed to fully and fairly develop the record; and (3) the Appeals Council failed to apply the correct legal standard. (Doc. 14). For the reason that follow, I address only the first claim.

By her first claim Plaintiff argues that Dr. Barber's RFC opinion, given in a medical source statement, found Plaintiff had the capacity for a limited range of light exertional work. Among the limitations assessed was a limitation for only occasionally reaching, handling, fingering, feeling and pushing/pulling with her hands. While the ALJ accurately summarized Dr. Barber's opinion and accorded it "greater weight" because the doctor was unbiased and his opinion was consistent with the other evidence, the ALJ did not include the limitation for reaching, handling, fingering or feeling in his residual functional capacity assessment, nor did he give an explanation for not doing so. Because the ALJ failed to state with particularity the weight he gave this medical opinion and improperly left this limitation out of the RFC and the hypothetical question posed the VE, Plaintiff contends that the ALJ's conclusion is unsupported by substantial evidence and the decision should be remanded for further proceedings. (Doc. 14 at 14-17).

In response, the Commissioner urges first that it is the ALJ's duty to assess a claimant's RFC, and not the doctor's. By her assessment, the ALJ analyzed Plaintiff's

7

medical records, including those from Dr. Barber concerning Plaintiff's ability to reach, handle, finger, or feel and properly assessed Plaintiff's RFC based on the whole of the record. To the extent that Dr. Barber indicated greater limitations than those found by the ALJ, the Commissioner contends that the doctor's clinical notes and the other medical evidence of record fail to support those limitations. She also points out the ALJ's reference to daily living activities that undermined Plaintiff's claims regarding reaching, handling, fingering, or feeling. Even if the ALJ erred, the Commissioner contends any error was harmless because the VE identified the job of surveillance system monitor, citing the Dictionary of Occupational Titles ("DOT") job number 379.367-010, as a job a person could perform under the stated hypothetical and, according to the DOT, limitations in reaching, handling, fingering, or feeling, would not preclude such work. (Doc. 15 at 5-10).

While I do not make any finding on the ALJ's conclusion that Plaintiff was not disabled, I do conclude the ALJ failed to abide by his duty to address these significant functional limitations assessed by Dr. Barber. In the absence of his conclusions on this evidence, it is not possible to determine whether the ultimate conclusion is supported by substantial evidence. And, the Commissioner's argument to the contrary does not cure that defect because the court must rely on what ALJ said, not on post hoc argument by the Commissioner on appeal. *See Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (declining to affirm simply because some rationale may have supported the ALJ's conclusion).

A brief review of the pertinent proceedings provides some context. After the first administrative hearing, the ALJ sent Plaintiff for a consultative examination because of his

concerns with the medical record, in particular, the reports of treating doctor Dr. Sukesh Sukumaran, M.D. (R. 477-512),[1] which the ALJ found to have internal inconsistencies.[2] Given the nature of Plaintiff's conditions, the ALJ indicated that the claim deserved a consultative examination by a rheumatologist and indicated one would be requested. (R. 62). Unfortunately, that is not what happened and, at the outset of the supplemental hearing, Plaintiff's counsel objected to Dr. Alvan Barber's findings because he was not a rheumatologist and had no other board certification. As a consequence, counsel argued that greater weight should be given to the reports and RFC questionnaires completed by Dr. Sukumaran because he was board certified in pediatric medicine and a treating doctor. (R. 67-69). Despite apparent dismay that a rheumatologist had not been employed for the consultative examination, the ALJ proceeded with the hearing and decision.

Dr. Barber performed the consultative examination, which he described as an independent medical examination with functional assessment, in April 2013. (*See* R. 540-54). Pertinent to this appeal, Dr. Barber assessed Plaintiff with limitations for, among other things, only occasional reaching, handling, fingering, feeling and pushing/pulling with both hands. (R. 551). In addressing Dr. Barber's report, the ALJ noted the various limitations, including

---

[1]Dr. Sukumaran, a treating rheumatologist, completed a Physical Residual Functional Capacity Questionnaire and an Arthritis Residual Functional Capacity Questionnaire in September 2012. Among other limitations, the doctor found Plaintiff was significantly limited in sitting, standing, walking, and lifting and had significant limitations in reaching, handling and fingering. (*See* R. 477-83). This assessment would not appear to allow Plaintiff to perform any competitive work.

[2]According to the ALJ, he was troubled by inconsistencies in that assessment. Plaintiff's counsel also advised the ALJ that Plaintiff's mother had added comments to that report as well. (R. 45).

9

those for occasionally reaching, handling, fingering, feeling and pushing/pulling (R. 32-33) and gave his opinion "greater" weight than that of Dr. Sukumaran because "[Barber's] unbiased opinions were determined by the duration and representation of the record as a whole and were consistent with the other substantive medical evidence of record." (R. 33).

However, in fashioning his RFC assessment, the ALJ found Plaintiff could lift/carry a maximum of ten pounds; but must avoid ladders, unprotected heights, operation of heavy moving machinery, and concentrated exposure to dust, fumes or gasses; and she was limited to a low stress work environment with no production requirements; but capable of occasionally bending, stooping, crouching or kneeling, but must avoid squatting or crawling, pushing or pulling of arm controls and foot controls. (R. 28). The ALJ gave no explanation for finding the limitation for pushing or pulling of arm controls but discounting or ignoring the bilateral reaching, handling, fingering, and feeling limitations assessed by Dr. Barber.

In this Circuit, certain rules apply to the consideration of the medical opinions of treating, examining, and nonexamining doctors. "Medical opinions are statements from physicians ... that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Id.* An ALJ commits reversible error where he fails to state the weight accorded to each item of impairment evidence and the reasons for his decision on such evidence. *See Lucas v. Sullivan*, 918 F.2d

10

1567, 1574 (11th Cir. 1994); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel,* 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Here, the ALJ chose to go forward with the decision employing Dr. Barber's report and assessment as a basis for his decision despite the fact that the doctor was not a rheumatologist. Moreover, he gave the opinion greater weight because the doctor was unbiased, his opinion was based on the whole record, and was consistent with that record. Yet, while he recognized the limitation Dr. Barber noted related to handling, fingering, and feeling in both hands, he failed to address it. In the circumstances of this case, the absence of any statement at all about the weight afforded Dr. Barber's limitation for bilateral handling, fingering, and feeling, leaves the Court guessing and unable to "determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel,* 631 F.3d at 1179.

Nor can I agree in this instance that the error is harmless because the Commissioner now argues that such limitations would not preclude the work of a surveillance system monitor according to the DOT. While the Commissioner is correct that the VE identified the sedentary job of surveillance system monitor and gave its DOT number in response to a hypothetical question by the ALJ, the VE did not provide further testimony about that type work or address the import of an *occasional* bilateral limitation in handling, fingering, and feeling.

11

As for the Commissioner's urging that the Court should rely on the DOT to conclude the job can still be performed with those limitations, the Court declines to do so in light of the ALJ's reliance on the VE's testimony and because it is unclear that the hypothetical question posed to the VE included all Plaintiff's limitations.[3] *See Dial v. Comm'r of Soc. Sec.*, 403 Fed. App'x. 420, 421 (11th Cir. 2010).[4] In *Dial*, the Eleventh Circuit considered whether an ALJ's failure to include all of the claimant's limitations in the hypothetical question to the VE was harmless because the DOT description of the jobs identified by the VE would not require the claimant to perform duties inconsistent with claimant's RFC. *Id.* The Eleventh Circuit found that the ALJ could have relied on the DOT, but instead relied solely on the testimony of the VE, who had not been instructed as to all of the claimant's limitations. *Id.* Thus, the Eleventh Circuit determined that the error was not harmless. *Id.* Such is the case here.

In these circumstances, it is unnecessary to address the remaining issues in detail. I note, however, that Plaintiff's third claim raises concerns. At issue is medical evidence from Melissa Elder, M.D., Ph.D., a treating pediatric rheumatologist, which was obtained less than one month after the decision and was submitted to the Appeals Council. By Dr. Elder's assessment, Plaintiff's psoriatic arthritis caused her significant limitations in sitting, standing, walking, lifting, and in reaching, handling, and fingering. (R. 570-75). Given this treating doctor's speciality, her RFC assessment requires full consideration by the ALJ on remand.

---

[3] The ALJ noted that the VE's testimony was consistent with the DOT, but he did not rely on the DOT for decision. Rather, the ALJ's decision rested on the VE's testimony, and that testimony may have been given on an incomplete hypothetical.

[4] Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

## IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be **REVERSED and REMANDED** for further proceedings before the Commissioner consistent with this Report and Recommendation.  I further recommend that the Clerk be directed to enter Judgment in favor of Plaintiff and to close the case, with the matter of fees and costs to be addressed upon further motion.

        Respectfully submitted this
        26th day of August 2016.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record